24-809. Good morning, and may it please the Court. My name is Raymond Dowd, and I represent the heirs of Fritz Grunewald. This action clearly alleges a 1966 tort. We allege that on July 28, 1966, after having received government warnings against criminal activity and being on notice of other red flags, the Art Institute of Chicago tortiously acquired Egon Schiele's Russian prisoner for $5,500 without a provenance inquiry that would have revealed Russian prisoner belonged to Fritz Grunewald's heirs. Thus, Art Institute's bad faith in 1966 was clearly alleged in the first complaint. Reversal is also warranted because the detailed allegations of the proposed second amended complaint amplified the factual detail underpinning the allegations of Art Institute's bad faith. And why do we focus on bad faith? Bad faith leads to reversal of each of the district court's rationales. Timeliness, collateral estoppel, and latches, all of these rulings should be reversed if this court looks at the record and finds evidence of bad faith. And we focus on just a few pieces of evidence to demonstrate that bad faith. The 1925 Rurtal Catalog, the 1950, August 1950 State Department warning, and the invoice are the key documents that show that Art Institute was in bad faith. Counsel? Yes, Your Honor. Before you go further down the line, I'd like to know whether you are conceding the position taken by the district court that if the HERE Act applies, you would lose a statute of limitations if at any time during a six-year period you were not barred by a state or federal statute of limitations against an argument I believe you made earlier that you must be free for the whole six-year period. So are you conceding that or do we have that before us as well? It's before you, Your Honor. We read the HERE Act to say that if we were barred by any federal or state statute of limitations prior to 1999, the HERE Act extends the time from six years from the passage of the HERE Act. So if that is so, if that reading is correct, then the question of bad faith, except insofar as it might deal with latches or things of that sort, is not really crucial. It is crucial if you are basically arguing what the period of statute of limitations is under New York law for somebody who was not a holder in due course but in bad faith. Right. I believe I agree. We argue that the Illinois statute of limitations would have ran in 1971. The New York statute of limitations would have run in 1969. So 40 years later, when we issued a demand letter from New York to Chicago, it didn't magically wake up the statute of limitations, and the judge asked, why didn't we sue in 2006? The answer is because the statute of limitations in Illinois had already run. So why were those inquiries even appropriate when this was on a 12b6, this was on a real 12b motion? Your Honor, we asked the same question. We didn't even have the chance to have discovery here. The demand and refusal that the judge relied on was not on the face of the complaint. It wasn't alleged. It wasn't our theory. And we think that the evidence that the judge considered outside the complaint, he didn't draw fair inferences from. A plaintiff's attorney asking for stolen property back, there's no inference of good faith that can be possibly drawn from that allegation, even if it were correct. What we're looking for is our day in court. We haven't had the opportunity to show what Art Institute's state of mind was. We allege that they knew or should have known that this was stolen artwork. We have experts testifying that anybody who bought Egon Schiele artworks from this period knew that Egon Schiele's collectors were largely murdered Jews. This was public. It was well documented. Now I want to focus on the 1925 Werthel Gallery catalog. It's at page A153 in the record. And the cover, it says 1925, which tells us it's pre-war. That is, it's published. And this catalog is referred to in all other scholarly catalogs that were published pre-1966. Art Institute of Chicago had access to it. And if we turn to page A166, we see number 17, Russian, head in hand, watercolor, signed, Egon Schiele, 1916, collection Fritz Grunbaum. Now, for timeliness, they didn't look, they should have seen this, and any person conducting reasonable provenance research would have found it. Why does that also go to collateral estoppel? In the Bacalar case, we didn't have a piece of evidence like this. These are different facts. It's a different legal issue. It's a different legal standard. Why does it also defeat the latches defense? As Judge Rakoff found in the Schoeps case, Schoeps v. MoMA, unclean hands on the part of the museum defeats a latches defense. The museum should have investigated this, and why do we know that? Counsel? Yes, Your Honor. How broadly are you arguing? Are you saying that a museum must always do a provenance test, and if it doesn't do it, and then something turns up, it is not a holder saying, of course, that's a sloppy way of putting it, but you know what I'm saying. No, Your Honor, I do argue that this is limited to Nazi-looted art, and the reason is we find at page A2225 a U.S. government warning specific to the museums, and at number 18, we find the name of Art Institute of Chicago. They were told, this will violate the National Stolen Property Act if you acquire property worth… What is the date of that government? This is August 1950. It's a U.S. Well before. Well before. Sent to every museum, art gallery, library in the nation, and it says under the 1907 Hague Convention, it is our government's obligation to return these artworks, and still they went ahead, experts in German and Austrian expressionism, and collected without looking into the products. I have a side question, and your time is almost up. Several other museums have settled analogous cases. This one did not. Has this case been taken to camp in any attempt, formal attempt by our court to have it be settled in some way the way the others, or has not not been done? That has not been done, Your Honor. Thank you. Thank you. May I conclude? I'm going to ask you one question. Oh, certainly, Your Honor. My one question is, are you pleading in the alternative here in terms of good faith versus bad faith? Because you bring some claims that treat the Art Institute as a good faith purchaser, because you talk about demand and refusal, and you talk about conversion, but you bring some claims that rest on them being a bad faith. Is that an alternative pleading? Am I misreading it? I would say that you're not misreading it. I think that the district court did misread it because I'm using what we call belt and suspenders, right? So we alleged that the HERE Act resuscitated our claims, and we had a deadline of December 15, 2022. We also then wrote a letter after we filed the lawsuit, and we said to the Art Institute of Chicago, hey, we'd like the artworks back. Yeah, no, I want to focus on the allegations of the complaint.  And so is it your position that they do not make any arguments that would require AIC to be treated as a good faith purchaser? None. I mean, there's no facts in the record that possibly lead to that. We said nothing in our complaint that would lead to the inference that they were a good faith purchaser. Okay, well, demand and refusal is a rule that applies to the New York law of demand and refusal. That applies to good faith purchasers, or does it apply to everyone, and I'm missing that? There is language in the Lubell case that says demand and refusal is a substantive part of the law of conversion. In fear of that, we sued them, then also made a demand just in case. So it wasn't any concession that they were in good faith. It was, well, if we miss the mark somehow, we're also doing this. So it's pleading in the alternative is what I'm asking you. Oh. Because to say that there's nothing in your complaint from which a reader could infer that you were making allegations that would treat the AIC as a good faith purchaser, I think is wrong. I think I've read the complaint, and I saw some allegations that I could infer suggested you were taking it all just in case. You all don't find that this is a bad faith purchaser. Here's a theory under which we would be entitled to relief if they're a good faith purchaser. Absolutely. But if you're disclaiming that, and this case turns on whether they're a bad faith purchaser alone, that's okay. I just need to know. Yeah. We don't – we allege that they, and we believe they were never in good faith, and the actions taken by plaintiff counsel were more to trigger prejudgment interest potentially than anything to do with good faith. So the demand – the additional demand that was made was, hey, come on, it's an opportunity. Give this back to stop that prejudgment interest clock from running. That was the true purpose behind it. I thought you also – I mean, following up on Judge Merriam's question, I thought you also argued that even assuming for the sake of argument that there was not sufficient proof of bad faith or whatever, sufficient allegations, that you still would prevail because – on this appeal because the judge got it wrong in other respects. Yes, that's true. And also the burden of proof, once we've shown an arguable claim of title, the burden shifts to the other side to prove an affirmative defense of good faith. So we're stuck in a pleading stage now arguing about – Let me just – in any event, wasn't the decision by the district judge to deny reconsideration because allowing a Second Amendment, another would be futile, so that if there are any arguments of this sort which are valid, then perhaps that decision is incorrect because it wouldn't be futile if such an argument could be made in a new complaint. We believe that's correct, Your Honor. Okay. Okay. Thank you, Counsel. We'll hear from you on rebuttal. Thank you. All right. Counsel, you have 12 minutes. We'll hear when you are ready. Good morning, Your Honors. Mark Yohalam for the Art Institute. I want to start with Judge Calabresi's question about how to apply Section 5e of the HERE Act because I think logically that's the first step. It cannot be – and the legislative history refutes the notion that if the claim was not available for the full six years, and as my friend says, it would have to be available for the full six years in every Federal and State jurisdiction in the country, that that is the only grounds on which 5e could apply because then 5e would never apply. The overwhelming majority of jurisdictions, I think actually every jurisdiction, has shorter than a six-year statute of limitations for conversion. I take that point, but a more picky kind of question, which was normally a statute of limitations defense is not decided on the face of the complaint. Here, as I read Judge Kodal's opinion, he relied heavily on the 2006 letter, which is not anywhere referenced remotely in the complaint. And so in effect, he made some factual determinations without holding an evidentiary hearing in which other facts that might have been relevant would have emerged. So wasn't that improper? No, not at all, Your Honor. So first of all, it's, of course, proper to consider a demand and refusal that is referenced but not attached to the complaint. The Williams v. National Art Gallery case is another. I didn't see the reference. So, for example, they allege that the conversion occurred when the Art Institute refused to return the artwork. That's at paragraphs 185 to 10. And, in fact, there's a lengthy discussion of demand and refusal toward the museum without saying when that occurred. It's undisputed that it occurred in 2006, that the motion to dismiss hearing, that was undisputed. In fact, it was conceded. So I think it is fully incorporated that there was a demand and refusal, and all the letters did was show when that date occurred. Again, I would agree with the repeated point made that the complaint clearly does allege that the demand and refusal rule applied here. That was not only their position in the complaint. It was also in their briefing on the motion to dismiss and the motion for summary judgment. For instance, they argued, quote, the statute of limitations of every state except New York barred their claim. And that's at Appendix 2182 and 1902. At the hearing, they said the same thing. That's at Supplemental Appendix 415. They allege the demand and the rule. I mean, that's just as a technical point. I don't understand that. I'd like you to spell that out for me. Sure. There are two answers to that, Judge Calabresi. One is that there is a full line of cases, particularly in the district court, but also on the district court. This court, Austin v. Ford Models, Rojas v. Roman Catholic Diocese, City of Pontiac Policeman's Retirement System, about the idea that you can't just amend a complaint to take out the allegations that permitted the defendant to assert a valid defense. They say that the pleading is not a game of tennis back and forth across the net with the court. But second, the district court here was right. It would be futile. And the reason is what it means to be a good faith purchaser versus a thief for purposes of the accrual rule is quite different from what it means in other contexts. Every case in which it has come up that the immediate accrual rule applies is one where it is a thief or someone who knew at the time he took the property that it belonged to the true owner. And here, even in the Second Amended Complaint, they in fact allege the opposite. They affirmatively allege the museum's ignorance of the fact that the painting was owned by Grunbaum. And so because they have that allegation in the Second Amended Complaint, that's at paragraph 191 and at A2225. But is that issue settled in New York as to what constitutes a bad faith, if you want to put it, or under those circumstances and under the particular circumstances of museums against private parties after the 1950 letter and so on, or is that a complicated issue of New York law on which there is no law and on which perhaps I might even have to certify? I think it's in between those two things, Your Honor. So, for example, if you look at cases like Leverage Leasing, Wallace Wood, Palomo, and Groves, all of those use actual knowledge as the requirement. And if red flags were sufficient, the leading cases in this area, like Peters, Groves, and Republic of Turkey, would all have come out differently because in all of those cases, there were allegations of red flags, and yet all of them nevertheless applied the demand and refusal rule. Those cases were what courts? Peters is the New York court, and Groves and Republic of Turkey are Federal decisions. And so all of them, the reason why you need to have a high, high standard for bad faith here is that in the overwhelming majority of cases, it would be an incredible burden on plaintiffs to apply the rule that my friend on the other side is urging here. New York doesn't have a discovery rule, so it would mean that as soon as a museum acquired a painting, despite red flags, the statue would start to run. Even if you had no notice, no notion as a plaintiff. I can agree with you that finding museums or in bad faith on easy grounds would be very hard on plaintiffs. But that's not for me to say. It's for the New York Court of Appeals to say. But the New York Courts of Appeals have repeatedly said that this is a plaintiff-friendly rule and that the purpose of it is to protect our claimants. And that as a consequence, all of these cases, including ones in which red flags have been alleged, have applied the demand and refusal rule. And for good reason, because that is the only way to advance this policy. There's no doubt that the rule is a peculiarly perverse but deflated. But if you're a crook, you'll get less time. There's less time whether you're charging somebody who isn't. Right. It is an odd way that this approach was reached a long time ago. It was in the 1960s. And New York considered changing to a discovery rule and rejected it because they wanted this pro-plaintiff regime to be broadly in place. As for Latches, because I see I just have four minutes, we think the Latches argument is as strong or stronger. Let me ask you about the Latches argument. The Judge Codall did not consider whether there was any prejudice to the art institute, which normally is a factor in determining whether Latches should be applied. It's not only that the plaintiffs stood on their hands, so to speak, but also that the other side was prejudiced. And how were they prejudiced? Oh, the exact same way that there was prejudice found already in Bacalar. And it was not that Judge Codall didn't consider prejudice. It's that he considered the prejudice issue resolved in Bacalar. I don't understand that because the specific wrongdoing here, which was different from Bacalar where you're considering a whole bunch of paintings, was that the Nazis, while the owner was in Dachau, forced him to sign a document that resulted ultimately in the transfer of the paintings. The only witnesses to that were the owner who was killed and the Nazi guards who presumably are long since gone. So even back 30 years earlier, there would have been no Latches witnesses. So that was the same argument in Bacalar. It was the same argument, the same art collection. And plaintiffs had argued to the judge successfully that they all shared the same provenance in that collection. And the reason why— But here the underlying problem is not, as in Bacalar, the transfer through various family members and so forth. The underlying, as I understand the plaintiff's complaint, as I understand what the Riefeld case held, the case in New York State, was the transfer in 1944, whenever that Dachau transfer occurred. Again, same argument in Bacalar. And what Judge Pauly explained is that, in fact, the evidence is quite strong that the Nazis didn't loot it, that the art came out of Austria with Lukacs, and that Lukacs was the one person who could explain how she got the art out. Had it been an inter vivos transfer to her? Had it been a gift? My problem, though, is that perhaps Latches can be occasionally so obvious that one can do them in 12b-6. But, boy, most of the time, Latches involved so many facts, so many backgrounds, such difference between case and case that to find Latches as a matter of law in 12b-6 is really quite unusual. I mean, it can happen. It did in one case. But isn't that a very unusual thing? It is unusual. It happened in Zuckerman. It happened in Zuckerman over the exact arguments that were made here, if you look at pages 31 to 32 of the Zuckerman reply brief. And here, the First Amendment complaint affirmatively pleads the death of Lukacs, who Judge Pauly found was perhaps the one person who could explain the provenance. Collier, who plaintiffs themselves say was a key player in the provenance. Leon Fisher and others. Those are affirmatively alleged in the complaint at paragraphs 137, 54, and 49. The passage of time is likewise affirmatively alleged. And as you just heard my friend on the other side say, it was clear from the face of the complaint that in Illinois, which has a discovery rule, the statute of limitations would have run in 1971, which means it's also clear that the culpable knowledge of the time in which there was delay began at least in 1968, which is when it would have to be to trigger the 71 statute of limitations. All of that was apparent. Number two, we have the fact of estoppel. And this case really is on all fours with Bacalar. You don't have to trust me saying that. That was what the plaintiffs themselves said. If you look at Appendix 2181, they said that the reason they would not have been able to sue in New York in 2006, 2007, 2008, 2009, wasn't the statute of limitations. They said the statute had not run in New York, but because given the Bacalar ruling, they would lose, that it wasn't until after Nagy that they felt they had a chance because they admitted they were bound by Bacalar. And you can see that at Supplemental Appendix 402. Sotomayor, in the Reef v. Nagy, which goes the other way, was in 2019. Correct. But Nagy is fundamentally driven by the fact that the acquiror acquired with full knowledge of the dispute of title. And so what the Court was saying was... Well, wasn't the NEAR Act after Bacalar anyway? And doesn't the fact of that Act by itself mean that there is something new and we cannot just say collateral estoppel simplistically? No, not at all, Your Honor. The NEAR Act specifically preserved the latches defense, as this Court has held and other courts have held, as the legislative history makes clear. And for that reason, to say that the NEAR Act destroyed the latches defense or changed the latches defense would be incorrect. I don't see how it could do that. It could change the statute of limitations in a case where 5e didn't apply, but 5e clearly does apply here. And for that reason, the statute of limitations... I'm sorry, I don't understand how one can say that because an Act allows a latches defense, it cannot also be read to say that the latches defense is affected by the presence of that case. Those are two different arguments, aren't they? Yes, Congress could write a statute. So that is, I suppose, technically true that Congress could write a statute that way. But there is nothing in the NEAR Act that suggests its purpose was to disrupt existing jurisprudence on latches or the precedential effect of prior cases, nor have I seen any case that applied it that way, nor did plaintiffs argue that issue. So I don't think that that contention would be properly before the Court. And I don't think... Again, the question of whether plaintiffs argued that issue becomes complicated when you're talking about whether an amended complaint, the right to file a new complaint, is futile. I agree, Your Honor, but there are multiple places in which plaintiffs have failed to preserve these arguments. They failed to preserve them in the complaint, in the pleadings below, in the hearing of the district court. We think there are waivers on top of waivers here. And it's true that some argument might be made if the second amended complaint were different. But the second amended complaint fundamentally is not different because it continues to allege not actual knowledge, but ignorance on the part of the arts district, not affirmative action to be willfully blind, but inaction. And under those bases, the district court was absolutely right that it would not change the way the good faith thief distinction runs under existing precedent, that that has always required actual knowledge. There is no case that has applied it without actual knowledge. When my friend was asked to provide such a case to the district court, he did not. And he has not provided one to this Court on appeal, again, for good reason of public policy. Judge Rakoff, I wanted to make sure I had answered all your questions on latches because I realized we pivoted off. Well, I'm still working through why you and the district court felt that no attention should be paid, in effect, to Reed v. Nagy, which, having already seen backlog, comes out the opposite way. So it's important to understand the very different factual circumstances in which it arises. It's basically an opportunistic buyer who buys when there's a cloud on title and gets a discount by doing that, and then tries to reap a windfall by arguing that latches should allow him to hold it despite the very clouds that were on the title to enable the discount. That's sort of the leading rationale. Well, I'm looking at that in paragraph, let's see, paragraph, well, it's page 130, anyway, of the opinion. They say the following. We find that plaintiffs have established that the power of attorney signed by Grumbaum while under Nazi control is a product of duress and, therefore, any subsequent transfer of the artworks did not convey legal title. Artwork stolen during World War II still belongs to the original owner, even if there have been several subsequent buyers, and even if each of those buyers was completely unaware that she was buying stolen goods. So let me stop there. Do you disagree with that? Yes. Why? Well, we disagree with it because in here the evidence is quite different. It is, as the Court held in Baclar, found in Baclar, and affirmed in Baclar, whether the transfer of property occurred before or after Grumbaum was sent to the camp is unknowable. Only Lukacs would have been able to say that. It is entirely possible and, indeed, likely that there was some understanding about that property separate and apart from the power of attorney. And because of the passage of time, if this had been timely brought while Lukacs was alive, that question could be answered. Lukacs could also answer, for example, if there was some kind of a settlement or waiver after World War II. Plaintiff's predecessors and interests knew Lukacs. They raised with her this question of Grumbaum's music rights and then considered that issue settled. They did not raise the issue of any art. Other plaintiffs visited her personally, and there were a number of these interactions, all of which she would have been able to talk to. She also would have been able to talk to the question whether there had been Nazi looting. I hear what you're saying, but she wasn't there when he was in Dachau and the transfer was made that is alleged to have been coerced. So, again, what Judge Pauly rightly found was that the evidence was unclear whether the transfer of property happened after the power of attorney or before or independently of it. Those were the very unknowable questions that Judge Pauly held required the application of latches here. It is undisputed that Lukacs also- Forgive me, but on the question of latches, again going back to the Reif v. Naki decision, the court says, this is at page end of 130, we reject defendant's argument that the defense of latches is a bar to plaintiffs for plebin and conversion claims. Naki acquired both pieces in 2013. He suffered no change in position, nor was any evidence lost between defendant's acquisition and plaintiff's demand for return of the artworks. Significantly, Naki was on notice of plaintiff's claims to the Grunbaum collection prior to the purchase as he filed a brief in the Bacalar action. Now, isn't that equally true of the Art Institute? No. I thought in 2000 you made a big point that in 2006 there was this demand. Oh, no, Your Honor. This is exactly the watershed between the cases. So the Art Institute acquired it in the 1960s, far in advance of there being any litigation or title to dispute, and Naki acquired it after Bacalar, after he had submitted the brief in Bacalar with full knowledge of the litigation. That's exactly the distinction. But what about all those things that your adversary is pointing out for bad faith but putting aside bad faith and good faith just on the question of notice? Why wasn't that enough to put them on notice? Well, but precisely so, number one, there may be factual disputes, but even accepting those factual disputes as true, the issue is whether there was prejudice, and it's undisputed that there was prejudice by the death of these witnesses. Those issues are a matter of collateral estoppel. The exact same plaintiffs litigated the exact same theory in front of the same court on appeal to this court and lost on the question of prejudice. The district court and this court both held that the prejudice was obvious in that case, and they are estopped by that ruling. That is the — if you can't get collateral estoppel under these circumstances, it's hard to see where you could get collateral estoppel on that issue. So — and again, the arguments against the ability to apply latches on the pleadings are the same arguments that were made in the reply in Zuckerman. I would commend the court — you can get that reply on Westlaw and Google to read it, and you'll see that these exact same — And again, if the degree of prejudice is different, then the whole question of latches becomes new. You know, latches is not an automatic rule if there is prejudice and this. Latches is an equitable rule that you decide on the basis of what is here and what is there. And that's why I find it very difficult to apply a latches decision in one case to another when you admit that there are some differences, though you say they're not important enough. Well, there always are going to be some differences between every case, and that's not enough to — Which is why latches is so difficult a thing to do estoppel on. I think nevertheless, if you look again at Peter, Zuckerman, Wertheimer, and Platt, those are four cases in which the parties to the transaction at issue have died. And all of those cases say that is such palpable prejudice. Here, the deaths include Collier, Lukacs, Grunbaum, the Kornfeld, the plaintiff's predecessors in interest. That entire chain of witnesses, firsthand and secondhand witnesses, are gone. Most of the firsthand and secondhand witnesses would have been available if this claim had been brought in the 1960s. As my friend says, they could have brought. That's why they say the Illinois statute of limitations ran. He says they were on discovery notice in the 1960s. If they had brought the claim then, the witnesses to testify would have been Lukacs, Collier, Kornfeld, and plaintiff's predecessors in interest, all of whom would have had knowledge about the provenance of this artwork. Was it Lukacs's? Was it one of the works she carried out of the country? Was it one of the works her husband or brother-in-law carried out of the country? Did she go back to Austria and collect it there? Had she settled with the other Grunbaum heirs over it? All of these questions could have been answered if there were litigation then, but they cannot be answered now. Kornfeld can't even testify now. Kornfeld, whom Judge Pauly found to be credible when he could testify, is now not available to testify. And my friend on the other side says he should be per se deemed not credible. These are the kinds of things that courts routinely find sufficient for lapses on the plea. Thank you. All right. Thank you, counsel. We've kept you past your time. Thank you. We appreciate your responses. We'll hear rebuttal. We have three minutes. Before you get started with your plan, which I'm sure you have, let me ask you a question. The district court on reconsideration found that you had not raised the argument that the statute ran in 66 in your original briefing, and then the district court therefore declined to consider it at reconsideration. On appeal, the defendants raised that in their main brief, and I didn't see a reply to that in your reply brief. Can you just address that for me and tell me why I shouldn't worry about that? Our complaint said the statute of limitations expired prior to 1999 and the HERE Act resuscitated it. We didn't get into the specifics of accrual in the body of the complaint. Or in your opposition to the motion to dismiss, right? That's not correct. Oh, okay. In the opposition to the motion to dismiss, and the judge refers to that again in his decision, and the adversaries, my learned colleague has it in his opposition brief, is the judge notes that we argued that the statute of limitations expired in the 1960s or 1970s. Now, you'll see reference to California, Illinois, and Ohio law, or Pennsylvania, because we were consolidated with many other museums. So we didn't get into the specifics of Illinois because we were faced with multiple defendants at that point. We squarely raised that in opposition to the motion to dismiss in writing. Okay, but you elected not to address it in your reply brief, which surprised me, given that the defendants raised it in their main brief on appeal. I thought it was in there. It may be. I couldn't find the words, you know, reconsider. I couldn't find the word forfeit. Right. The things I was looking for to make sure I hadn't missed it. But I hear your argument that you wanted to. The words 1960s and 1970s should trigger. That was adequate to raise the argument that that's, that this was a bad faith procedure, and therefore the statute expired. Right. And please recall that my learned colleague points out these seemingly inconsistent statute of limitations theories that we have on a pre-answer motion. Our theory was that, well, if the property is in Illinois, that's where the statute of limitations accrues upon the wrongful acquisition and expires. And under the HERE Act, all we have to show is one expiration of a statute of limitation to be resuscitated. Now, if the property were to come to New York and we could tag it as we did in Reif v. Nagy at the Park Avenue Armory or at another museum, then we could tag it in New York. But as of it sitting there in an Illinois museum where the judge found there was an Illinois accrual of a statute of limitations, the Illinois, respectfully, is where we believe it ran. But even accepting the judge's finding that there would be a borrowing statute and we would apply sitting in New York a shorter statute of limitations, either one, we are able to show the accrual of a statute of limitations that expired in either 1969 or 1971. Okay. So let me just ask. In your briefing, you're really focused on New York law. Now we're saying that it's Illinois law that would control. The judge decided New York law controlled, and we said, okay, we win under that scenario as well. We don't need to fight. So is that the theory we're moving forward on now is New York law, or are we moving forward again in the alternative on either Illinois or New York? No. Under the HERE Act, it says any federal or state statute of limitations has expired. We win under both. Both scenarios, we win. That's what the HERE Act says. Now, to focus in on some of the larger picture issues that were raised by my colleague, the family did not know that the art collection survived World War II. And my learned colleague points out that, well, somebody asked about royalties and people were looking for things they didn't know, and we have testimony. It's uncontradicted. After World War II, the family didn't know that the art collection survived at all. So to blame the family for every single loss it witnessed. How can the family be blamed, for example, for the loss of Kornfeld? When we made that demand and refusal, Kornfeld was alive in 2006. We were taking depositions, and they sat on their hands. That's not fair to blame us now that Kornfeld is dead. And to Judge Calabresi's excellent point, offensive collateral estoppel under New York law, the issue must be identical. Identical, not close, but identical. Here we have different artworks, different legal standards, different supervening changes in law. The HERE Act, in fact, is a substantive change in law. So if we look at each one of these things and say, well, whose fault was the loss of evidence? It goes back to the Art Institute of Chicago. And why can't they be prejudiced? We look at page A-166, the 1925 Werthel Gallery Catalog. Had they looked, they would have seen that this was Fritz Grunbaum's. They cannot show the latches prong. So it's different facts under collateral estoppel. Under latches, they can't show prejudice because every bit of evidence that was lost was their fault. Had they conducted the diligence, they could have preserved all of the evidence that they now claim is lost. All right. Thank you, counsel. Thank you both. We'll argue. We'll take the matter. Under submission.